FILED
2021 Sep-14  AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DEIRDRA BERNICE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-656-GMB |
| | ) | |
| KILOLO KIJAKAZI,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

On July 11, 2017, Plaintiff Deirdra Bernice Miller filed an application for supplemental security income ("SSI"). Her alleged disability onset date is June 20, 2017.[2] Miller's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a video hearing on June 27, 2019, and denied Miller's claims on August 8, 2019. Miller requested a review of the ALJ's decision by the Appeals Council, which declined review on April 17, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of April 17, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Miller amended her alleged onset date from April 17, 2017 to June 20, 2017. R. 202.

Miller's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 12.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[3]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[3] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

3

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Miller bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?

(5) Is the claimant unable to perform other work given her residual
functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next

question, or, [at] steps three and five, to a finding of disability.  A negative answer

to any question, other than at step three, leads to a determination of 'not disabled.'"

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R.

§ 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior

work the burden of proof shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*,

762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Miller was born on March 22, 1972 and was 45 years old on the date she filed

her application. R. 39, 181.  Her primary complaints are headaches, dizziness,

lightheadedness, and fainting spells caused by high blood pressure. R. 51–52, 58.

She also testified that she struggles with depression, sleeplessness, weight loss, and

panic attacks. R. 54–57.  In her disability report, Miller alleges that she is unable to

work because of uncontrollable high blood pressure. R. 214.  Miller graduated from

high school and has past work experience as an inventory clerk. R. 50, 63, 215.

The ALJ issued his decision on August 8, 2019. R. 41.  Under step one of the

five-step evaluation process, he found that Miller has not engaged in substantial

gainful activity since July 11, 2017. R. 32.  The ALJ concluded that Miller suffers from the severe impairments of history of heart failure secondary to hypertensive cardiomyopathy, sickle cell trait, severe hypertension, major depressive disorder recurrent moderate, and panic disorder with agoraphobia.[4] R. 32–33.  The ALJ noted that these medically determinable impairments cause significant limitations to Miller's ability to perform basic work activities. R. 32.  But the ALJ concluded at step three of the analysis that none of Miller's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 33–35.

Before proceeding to the fourth step, the ALJ determined that Miller had the residual functional capacity ("RFC") to perform a limited range of light work. R. 35. More specifically, the ALJ found that Miller had the following limitations with respect to light work, as defined in 20 C.F.R. § 416.967(b):

> occasional climbing of stairs or ramps; no climbing ladders, ropes or scaffolding; occasional balancing, stooping, kneeling, crouching and crawling; and avoid unprotected heights and dangerous moving machinery.  In addition, she is able to understand, remember and apply simple routine instructions and concentrate and persist for extended periods in order to complete simple routine work with nonconfrontational supervision; she is able to maintain superficial work relationships with others, however, she would need to avoid work related contact with the general public; she is able to adopt to a routine work setting where changes are infrequent and introduced gradually and are well explained; and she is able to avoid normal workplace hazards such as boxes left on the floor[,] doors left ajar[,] and approaching vehicles.

---

[4] The ALJ found Miller's other alleged impairments to be non-severe. R. 32–33.  Miller does not challenge these findings.

R. 35.   At the fourth step, the ALJ considered Miller's age, education, work experience, and RFC in determining that she was not capable of performing her past relevant work. R. 39.   However, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Miller can perform, including electronics worker, housekeeper cleaner, and garment sorter. R. 40.   Therefore, the ALJ concluded that Miller has not been under a disability as defined by the Social Security Act since July 11, 2017, the date the application was filed. R. 40.   Based on these findings, the ALJ denied Miller's application for SSI. R. 41.

## IV.  DISCUSSION

Miller articulate five arguments in favor of remand: (1) the ALJ did not assign proper weight to the opinion of treating psychiatrist Dr. Marilyn Elizabeth Lachman, (2) the ALJ did not assign proper weight to the opinion of consultative physician Dr. Sathyan Iyer, (3) the ALJ erred in his consideration of Miller's daily activities, (4) the Appeals Council erred in failing to review new evidence and applied the wrong standard, and (5) the denial is not supported by substantial evidence if the new evidence is considered. Doc. 13 at 13–29.

Before addressing the merits of these claims, the court finds that Miller abandoned the second, third, and fifth arguments.  "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir.

2004).  "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).  A recent panel of the Eleventh Circuit, in an unpublished opinion, applied *Singh* in finding that the plaintiff abandoned an issue on appeal "because her initial brief simply mentions the issue without providing any supporting argument." *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing *Singh*, 561 F.3d at 1278–79); *see also Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019) (quoting *Sapuppo v. Allstate Fla. Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014), in declining to address one of the plaintiff's arguments because she raised it "'in a perfunctory manner without supporting arguments'"); *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259 (N.D. Ala. Apr. 3, 2019) (finding plaintiff abandoned her argument that the ALJ improperly considered her fibromyalgia where she did not identify a specific error with the ALJ's consideration of her fibromyalgia and did not explain why she believed the ALJ's evaluation of her fibromyalgia ran afoul of SSR 12-2p).

In the section of her brief dedicated to Dr. Iyer, Miller provided no argument or citation to the record.  Doc. 13 at 16–19.  She did not identify the relevant portions of the medical opinion at issue.  The three and a half pages in this section of her brief

consisted of general principles of law governing an ALJ's treatment of medical experts and block quotations from other cases dealing with the issue,[5] but Miller stopped short of explaining how the ALJ erred in considering Dr. Iyer's opinion. Doc. 13 at 16–19. In fact, the brief did not provide any substantive analysis on this issue. This sort of perfunctory argument does not give the Commissioner or the court any guidance on Miller's argument aside from the simple fact that she asserts error.[6] For these reasons, the court finds that Miller has abandoned this issue. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

The same can be said of Miller's criticism of the ALJ's consideration of her daily activities. Doc. 13 at 19–20. Again, she did not identify the specific error or offer any citations to the record. Instead, in the half of a page dedicated to this argument, Miller's brief excerpted one judicial opinion and referenced two others

---

[5] Like the discussion of her treating physician, Miller relies on cases applying regulations that are no longer in effect.

[6] Miller does not attempt to cure this deficiency in her reply brief, but instead relies on the same cases mentioned in her opening brief—again with no analysis or even reference to the facts at issue in her case. Doc. 15 at 6–7.

where the court held that the claimant's daily activities did not discredit her testimony. Doc. 13 at 19–20.  Miller made no attempt to apply the law or to the facts at hand, and therefore she has abandoned this issue. *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

 As for her last claim, Miller's brief references a claimant other than Miller: "all submissions describe physical and psychological symptoms manifested by Howard that, due to their nature and severity, could bear on her condition during the relevant period between 7/1/05 the alleged onset date 3/11/11/11 [sic] and 1/25/13, the date of the decision." Doc. 13 at 28.  Even after the Commissioner pointed out this discrepancy, Miller's reply brief repeated the same error. Doc. 15 at 15.  Because Miller has not advanced any argument about the facts of her case, she has abandoned this claim. *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

The court addresses Miller's two remaining arguments below.

## A.    Dr. Lachman's Opinion

Miller argues that the ALJ failed to accord great weight to the opinion of her treating psychiatrist, Dr. Lachman, without articulating good cause for doing so, as required by the Eleventh Circuit's treating physician rule. Doc. 13 at 13–16.  The Commissioner argues that Miller's reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing the Commissioner's evaluation of medical opinions for claims, like

Miller's, that have been filed after March 27, 2017. Doc. 14 at 4–15.  In her reply brief, Miller concedes that the new regulations govern because she applied for SSI after March 27, 2017, but argues that the treating physician rule remains in effect. Doc. 15 at 1–2.  The court finds that the new regulations control Miller's claim and supersede the treating physician rule.

The Eleventh Circuit developed the treating physician rule "as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). Under this rule, the Eleventh Circuit required ALJs to articulate good cause for discounting the opinion of a treating physician. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The SSA formalized the treating physician rule in 1991, implementing regulations that required ALJs to "give more weight to medical opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The new regulations eliminate the hierarchy of medical opinions and the treating physician rule. 20 C.F.R. §§ 404.1520c(a) & 416.920c(a).  The Commissioner now has "full power and authority to make rules and regulations" related to the proof and evidence needed to establish a right to benefits under the Social Security Act. 42 U.S.C. § 405(a).  And "[a] court's prior judicial construction

of a statute trumps an agency construction . . . only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Here, the Social Security Act requires the Commissioner to "make every effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B) & 1382c(H)(i).  But it does not specify how an ALJ must evaluate treating source evidence.  Miller has not identified any case in which the Eleventh Circuit has held that the Social Security Act mandated the treating physician rule, and she has not asserted that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 845 (1984) (holding that courts must give deference to validly adopted regulations).  Therefore, the court will apply the 2017 regulations—not the treating physician rule—to the ALJ's evaluation of the opinion evidence.

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).  The ALJ may, but need not, explain how she

considered other factors—such as the medical source's specialization and relationship with the claimant—when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2).

With these new regulations as the guide, the court turns to the ALJ's treatment of Dr. Lachman's opinion.  Miller highlights Dr. Lachman's opinions documented on a mental health questionnaire and mental health source statement. R. 450–51. Dr. Lachman completed the questionnaire and statement on April 16, 2018, the first time she saw Miller.[7] R. 450–51.  The mental health questionnaire is a one-page pre-printed form on which the mental health professional checks the boxes corresponding with criteria that apply to the claimant. R. 450.  Dr. Lachman checked the following boxes for Miller:

- Depressive Syndrome characterized by the following: depressed

---

[7] The treatment records from that first visit do not reflect that Dr. Lachman performed a mental status examination R. 542–49.  Instead, Dr. Lachman recorded Miller's subjective symptoms and reported history and assessed major depressive disorder and an inability to work, repeatedly relying on her subjective symptoms as justification for his diagnosis. R. 542–44.

mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of death or suicide, marked restriction in ability to understand, remember, or apply information, marked difficulties in ability to interact with others, marked difficulties in ability to concentrate, persist or maintain pace, and marked limitation in ability to adapt or mange oneself;

- Bipolar disorder characterized by the following: flight of ideas, decreased need for sleep, distractibility.
- Anxiety disorder characterized by the following: easily fatigues, difficulty concentrating, irritability, sleep disturbance,
- Panic Disorder or Agoraphobia characterized by the following: panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences, disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces);
- Obsessive-Compulsive Disorder characterized by one or both: involuntary, time-consuming preoccupation with intrusive, unwanted thoughts, repetitive behaviors aimed at reducing anxiety.

R. 450.

The mental health statement is a one-page pre-printed form asking the mental health professional to circle "yes or no" in response to the following questions:

- Can Ms. Miller understand, remember or carry out very short and simple instructions?
- Can Ms. Miller maintain attention, concentration and/or pace for periods of at least two hours?
- Can Ms. Miller perform activities within a schedule and be punctual within customary tolerances?
- Can Ms. Miller maintain an ordinary routine without special supervision?
- Can Ms. Miller adjust to routine and infrequent work changes?
- Can Ms. Miller interact with supervisors?
- Can Ms. Miler interact with co-workers?

14

- Can Ms. Miller maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness?

R. 451.  Dr. Lachman circled "no" to every question except to the first and last questions. R. 451.  The form also reflects that Miller would be off-task more than 80% of the time during an eight-hour day and that she would miss more than 20 days of work in a 30-day period due to psychological symptoms. R. 451.  When asked if these limitations existed on April 17, 2017,[8] Dr. Lachman circled "yes." R. 451.  He listed "sedation" as a side effect of Miller's medication. R. 451.

The court finds that substantial evidence supports the ALJ's finding that Dr. Lachman's opinion is not persuasive. R. 39.  First, the mental health questionnaire and mental health source statement form do not reflect a substantive explanation for any of his opinions.  Instead, Dr. Lachman checked boxes, circled responses, or gave one-word or numerical answers without explanation. R. 450–51.  These forms have limited probative value.  Indeed, several courts have criticized "form reports" where a physician merely checks off a list of symptoms without providing any explanation or evidence supporting the opinion. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that a "form report completed by Dr. Morgan . . . consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)

---

[8] This date corresponds with Miller's alleged onset date, one year before Dr. Lachman evaluated her.

("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").

Second, Dr. Lachman's opinion is inconsistent with the other mental health evidence in the record.  Miller did not seek mental health treatment until March 2018, when she engaged in psychotherapy sessions through August 2018. R. 539–51, 566–74.  There is no evidence in the record of any substantial limitation in mental functioning requiring inpatient psychiatric hospitalization, and all other objective observations generally were within normal limits. R. 537, 540, 55, 559, 563, 567, 580.  None of Miller's medical providers detailed the restrictive mental limitations appearing on Dr. Lachman's forms.  As the ALJ noted, "[f]or such extreme limitations to escape the attention of these other medical providers appears unlikely." R. 39.

Miller's mental consultative examination with neuropsychologist Samuel Fleming III, Ph.D., also is inconsistent with Dr. Lachman's opinion.  During the September 12, 2017 examination, Miller appeared alert and fully oriented. R. 445.

Dr. Fleming noted that Miller had not received any treatment from a mental health practitioner and was not taking any medications. R. 445.  Although Dr. Fleming noted some deficits in concentration and attention (R. 446), the examination did not reveal any significant limitations. R. 446–47.  Miller did not have unusual mannerisms or motor activity; did not exhibit any evidence of mania; her speech was spontaneously produced, coherent, and goal directed; and her affect, appearance, and hygiene were adequate. R. 446–47.  Her immediate recall, recent memory, abstraction abilities, and thought process and content were adequate, and she was able to provide medical, educational, and work history. R. 445–47.  Dr. Fleming saw no evidence of blocking, muteness, repetitions, flight of ideas, loosening of associations, tangentially, circumstantiality, confusion, hallucinations, delusions, ideas of reference, obsessions, or compulsions. R. 447.

Finally, the ALJ noted inconsistencies between Dr. Lachman's opinion and Miller's reported activities. R. 39.  For example, one month after Dr. Lachman completed her forms, Miller reported attending graduations and other events for her grandchildren. R. 550–52.  And her therapist documented an essentially normal mental status examination aside from some depression. R. 551.  Miller displayed a full affect, clear speech, a logical thought process, normal perception, average intelligence, and normal thought content, cognition, insight, and judgment. R. 551.

On this record, the court concludes that the ALJ did not err in finding Dr.

Lachman's opinion to be unpersuasive.  The ALJ articulated his reasons for doing so and the court agrees that Dr. Lachman's opinion was not consistent with the other medical records, consultative mental examination, and Miller's activities.  The conclusory nature of the forms on which he memorialized his opinions underscores this conclusion.

## B.    Appeals Council

Miller argues that the Appeals Council erred in refusing to consider additional evidence. Doc. 13 at 20–25.  Miller submitted four pieces of additional evidence to the Appeals Council: (1) June 2019 records from Quality of Life; (2) August 14, 2019 record from Quality of Life; (3) October 2019 report from June Nichols, Psy.D.; and (4) November 2019 statement from Dr. Nichols. R. 8, 14–26, 69–90. The Appeals Council found that the June 2019 records did not show a reasonable probability of changing the outcome of the ALJ's decision and that the other records were chronologically irrelevant. R. 2.

A claimant may present new evidence at each stage of the administrative process, including before the Appeals Council. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).  The Appeals Council has discretion to decline review of an ALJ's denial of benefits. *See id*.; 20 C.F.R. § 404.970(b). "But the Appeals Council 'must consider new, material, and chronologically relevant evidence'" submitted by the claimant. *Washington*, 806 F.3d at 1320; 20

C.F.R. § 404.970(a)(5).

As to the June 2019 records, Miller contends that the Appeals Council incorrectly applied a "reasonable probability" standard—instead of a "reasonable possibility" standard—in denying her request for review. Doc. 13 at 23. This argument in unavailing. Under the pertinent regulations, when a claimant presents evidence after the ALJ's decision, the Appeals Council must consider whether "there is a reasonable probability that the additional evidence would change the outcome of the decision." *See* 20 C.F.R. § 404.970(a)(5); *see also Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021) (rejecting same argument made by same counsel). The Appeals Council did just that, and Miller has not offered any other basis for questioning that assessment.

The Appeals Council did not consider the other records because it found that this evidence was not chronologically relevant. R. 2. These records post-date the date of decision, and Miller's brief does not explain why this new evidence nevertheless would be material and chronologically relevant. Like so many of Miller's arguments, her failure to make any substantive argument in support of this contention constitutes an abandonment of her argument. *Access Now, Inc.*, 385 F.3d at 1330. Miller's perfunctory argument does not give the Commissioner or the court any guidance on her claim of error aside from the fact that she does, in fact, assert error. This is insufficient and the court finds that Miller has waived her challenge to

the Appeal Council's rejection of her new evidence.

## V.  CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered.

DONE and ORDERED on September 14, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE